IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIE JAMES MCKENZIE, JR.,

      **Plaintiff,**

  v.                                      **Civil Action 2:16-cv-544**
                                               **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

**OPINION AND ORDER**

Plaintiff, William James McKenzie, Jr., filed this action under 42 U.S.C. § 405(g) seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits. For the reasons that follow, the Court **REVERSES** the Commissioner of Social Security's non-disability finding and **REMANDS** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g).

**I.**     **FACTUAL AND MEDICAL BACKGROUND**

Plaintiff filed this case on June 20, 2016 (Doc. 3), and the Commissioner filed the administrative record on August 22, 2016 (Docs. 12–13). Plaintiff filed a Statement of Specific Errors on October 24, 2016 (Doc. 14), and the Commissioner responded on November 21, 2016 (Doc. 16). Plaintiff filed a Reply Brief on December 6, 2016. (Doc. 18). Upon the parties' consent and pursuant to 28 U.S.C. § 636(c), this case was referred to the Undersigned to conduct all further proceedings.

### A. Personal Background

Plaintiff was born on July 19, 1960, and was fifty-one years old on the alleged onset date of disability. (*See* Tr. 29, PAGEID #: 88). He has a high school education and work experience as an industrial sweeper/cleaner and steel laborer. (*Id.*). This case primarily concerns impairments in Plaintiff's lumbar and cervical spines and right hip. (*See* generally Tr. 24, PAGEID #: 83).

### B. Relevant Hearing Testimony

Administrative Law Judge Terrence Hugar (the "ALJ") held a hearing on October 29, 2014. (Tr. 22, PAGEID #: 81). During the hearing, Plaintiff testified that he had an accident while working at a steel mill in Weirton, West Virginia. (Tr. 445, PAGEID #: 506). Specifically, Plaintiff explained that he was cleaning the gratings when they gave way, causing him to fall to the floor below. (*Id.*). The accident caused injuries to his neck, back, and hip. (*Id.*).

Plaintiff testified that, after the accident, he "wasn't able to function." (Tr. 446, PAGEID #: 507). He elaborated about the resulting back impairment, lack of mobility in his hip, and pain down his right leg. (*Id.*). Plaintiff received a right hip replacement and has used a cane since that surgery. (Tr. 447, 450, PAGEID #: 508, 511). As of the hearing date, Plaintiff had pain in his back, hip, and knee, for which medication provided minimal relief. (Tr. 450–51, PAGEID #: 511–12). Plaintiff testified that his injuries do not, however, prohibit him from bending over to pick up an item on the floor. (Tr. 451, PAGEID #: 512; *see also id.* (Plaintiff explaining that he could lift "nothing really," with five or ten pounds being the maximum amount)).

### C. Relevant Medical Evidence

John Columbus, M.D. of Trinity Workcare, in addition to other doctors, treated Plaintiff for his conditions and the resulting pain for years after the accident. Plaintiff's first appointment with Dr. Columbus was on January 25, 2012, during which Dr. Columbus found Plaintiff totally disabled from work. (Tr. 248–49, PAGEID #: 307–308). At a follow-up appointment on February 8, 2012, however, Dr. Columbus released Plaintiff to return to "light office work" with restrictions, including that Plaintiff could lift or carry no more than ten pounds, could bend, twist, and push/pull only occasionally, and could not reach below the knee, squat, or kneel. (Tr. 243, PAGEID #: 302). Dr. Columbus prescribed Plaintiff pain medication and physical therapy, and return appointments. (Tr. 246, PAGEID #: 305).

Ravinder Chopra, M.D. examined Plaintiff on February 22, 2012. (Tr. 240–42, PAGEID #: 299–301). He prescribed Plaintiff medication for a "cervical, lumbar strain" and continued his work restrictions. (*Id.*). Hence, Dr. Chopra also concluded that Plaintiff could lift or carry no more than ten pounds, could bend, twist, and push/pull only occasionally, and could not reach below the knee, squat, or kneel. (Tr. 240, 242 PAGEID #: 299, 301). Dr. Chopra continued the same restrictions on March 9. 2012. (Tr. 237, PAGEID #: 296).

Dr. Columbus continued Plaintiff's medication, physical therapy, and the same work restrictions upon examination on March 29, 2012. (Tr. 233–35, PAGEID #: 292–94 (noting "desk duty" and restricting lifting or carrying to no more than ten pounds; bending, twisting, and pushing/pulling only occasionally; and prohibiting reaching below the knee, squatting, or kneeling)). Dr. Columbus observed that Plaintiff had not had "enough clinical improvement at 12 weeks now." (Tr. 235, PAGEID #: 294; *see also id*. (indicating that Plaintiff should have an MRI)). During the following month's visit, Dr. Columbus continued Plaintiff's medication and

work restrictions. (*See* Tr. 229–31, PAGEID #: 288–90 (April 24, 2012 visit restricting lifting or carrying to no more than ten pounds; bending, twisting, and pushing/pulling only occasionally; and prohibiting reaching below the knee, squatting, or kneeling)).

Dr. Columbus examined Plaintiff again on June 29, 2012. (Tr. 224, PAGEID #: 283). Plaintiff described his pain as "basically miserable" and impacting "his ability to ambulate." (*Id*.). Plaintiff told Dr. Columbus that "he want[ed] to have something done" to address the pain. (*Id*.). Dr. Columbus recommended an MRI of the lumbrosacral spine and right hip and prescribed Plaintiff pain medication and physical therapy. (*Id*.). Dr. Columbus continued Plaintiff's work restrictions. (Tr. 222, PAGEID #: 281) (restricting lifting or carrying to no more than ten pounds; bending, allowing twisting, and pushing/pulling only occasionally; and prohibiting reaching below the knee, squatting, or kneeling)).

At Plaintiff's next four monthly appointments, Dr. Columbus again continued pain medication and imposed work restrictions. (Tr. 218–20, PAGEID #: 277–79 (July 31, 2012 visit restricting lifting or carrying to no more than ten pounds; allowing bending, twisting, and pushing/pulling only occasionally; and prohibiting reaching below the knee, squatting, or kneeling); Tr. 217, PAGEID #: 276 (August 29, 2012 visit noting that Plaintiff "will press on forward with work restrictions"); (Tr. 210–13, PAGEID #: 269–72 (September 27, 2012 visit restricting lifting or carrying to no more than ten pounds; allowing bending and twisting only occasionally; and prohibiting and pushing/pulling, squatting, or kneeling); (Tr. 206–209, PAGEID #: 265–668) (October 25, 2012 visit (noting that MRI "is very indicated here and it has been months now, the pain is not getting any better and it is now radiating down his buttocks")).

Plaintiff reported that his neck was "flaring up" during a November 21, 2012 appointment with Dr. Columbus. (Tr. 205, PAGEID #: 264). Upon examination, Dr. Columbus

4

found Plaintiff to be totally disabled from work and refilled Plaintiff's pain medications. (*Id*.; Tr. 202–203, PAGEID #: 261–62). At Plaintiff's next appointment on December 18, 2012, Dr. Columbus continued his finding of total disability and again refilled Plaintiff's pain medications. (Tr. 198–99, PAGEID #: 257–58; Tr. 201, PAGEID #: 260). Dr. Columbus examined Plaintiff on January 16, 2013 and February 5, 2013, and determined that he was capable of "light duty work 4 hours a day with restrictions." (Tr. 197, PAGEID #: 256; Tr. 193, PAGEID #: 252).

Over time, Plaintiff continued to be examined and treated by Dr. Columbus. (*See, e.g.*, Tr. 184, PAGEID #: 243 (March 12, 2013 appointment); Tr. 183, PAGEID #: 242 (April 10, 2013 appointment); Tr. 422, PAGEID #: 481 (May 7, 2013 appointment); Tr. 419, PAGEID #: 478 (June 5, 2013 appointment); Tr. 417, PAGEID #: 476 (July 3, 2013 appointment); Tr. 413, PAGEID #: 472 (July 26, 2013 appointment); Tr. 347, PAGEID #: 406 (September 30, 2013 appointment); Tr. 404, PAGEID #: 462 (October 23, 2013 appointment); Tr. 339, PAGEID #: 398 (November 27, 2013 appointment).

Plaintiff also saw Edward Snell, M.D. on November 14, 2013. (Tr. 436–37, PAGEID #: 495–96). Dr. Snell noted that Plaintiff "is in constant pain," has cramping, and was positive for tenderness. (Tr. 436, PAGEID #: 495). He also noted that Plaintiff did not have instability due to his right hip, had 5/5 strength for all motor groups, and had normal range of motion, gait, and reflexes. (Tr. 436–37, PAGEID #: 495–96). Dr. Snell diagnosed Plaintiff with low back pain and osteoarthritis of the hip and treated Plaintiff with a steroid injection. (Tr. 436, PAGEID #: 495).

At an appointment on December 26, 2013, Dr. Columbus noted that Plaintiff was seeking employment that would allow him to "go back [to work] in a supervised capacity," despite continuing to suffer from significant pain. (Tr. 338, PAGEID #: 397). Upon examining Plaintiff

the following month, Dr. Columbus noted that his range of motion was diminished due to pain, his gait was antalgic, he was planning to undergo hip surgery, and he had been unable participate in vocational rehabilitation. (Tr. 396, PAGEID #: 455). Dr. Columbus continued observe Plaintiff's significant pain, diminished range of motion, and antalgic gait at subsequent appointments. (*See, e.g.*, Tr. 394, PAGEID #: 453 (noting significant pain and diminished range of motion on February 27, 2014); Tr. 392, PAGEID #: 451 (noting pain, diminished range of motion, and antalgic gait on March 24, 2014); Tr. 388, PAGEID #: 447 (noting Plaintiff was in "quite a bit of pain" and "[u]ncomfortable appearing" and that Plaintiff's gait was antalgic, lower back and hip were tender, and range of motion was diminished on May 28, 2014); Tr. 331, PAGEID #: 390 (noting Plaintiff was "still having a lot of pain," his gait was antalgic, and his "range of motion of the lumbar spine is diminished in flexion and extension, side bending and side rotation due to pain" on June 30, 2014); Tr. 382, PAGEID #: 441 (noting Plaintiff's pain was "pretty much there all time" and use of a cane on August 29, 2014)).

Orthopedic surgeon Kumar Amin, M.D. examined Plaintiff on May 28, 2014, prescribed a cane, and recommended a hip replacement. (Tr. 299–300, PAGEID #: 358–59). Dr. Amin examined Plaintiff again on June 11, 2014, and had a detailed discussion with him concerning his hip diagnosis, prognosis, and treatment options. (Tr. 295–97, PAGEID #: 354–56). Dr. Amin observed:

> Surgery is indicated because he has advanced disease radiographically and has failed 2 years of nonsurgical treatment, including injections, physical therapy and medications. I did explain to him carefully the life-long hip dislocation precautions and what he can expect from his surgery and I don't think it is going to change his back pain.

(Tr. 295, PAGEID #: 354). In addition to explaining to Plaintiff that "[the surgery] may not necessarily change his back pain," Dr. Amin also informed Plaintiff that the surgery may not

6

"allow him to return to gainful employment." (*Id*.). Nevertheless, Plaintiff advised Dr. Amin he was ready to proceed with the hip replacement surgery. (Tr. 296, PAGEID #: 355).

Plaintiff underwent the right hip replacement surgery with Dr. Amin on July 29, 2014. (Tr. 363–67, PAGEID #: 422–26). Plaintiff had "no unusual complaints" the day after the surgery and x-rays showed that "the right implant [was] in good alignment." (Tr. 362, PAGEID #: 421). Two days after surgery, Dr. Amin noted that Plaintiff was "tolerating" the pain "well with oral medication" and was "doing well with therapy." (Tr. 361, PAGEID #: 420). Dr. Amin remarked generally that Plaintiff was "doing well" and "reviewed . . . [his] postoperative protocol and hip dislocation precautions." (*Id*.).

Plaintiff was examined by Dr. Snell on September 11, 2014. (Tr. 434–35, PAGEID #: 493–494). Dr. Snell noted that Plaintiff medication was not providing Plaintiff with total relief; more specifically, he had back pain at a level "5 with 100% decrease in activity." (Tr. 434, PAGEID #: 493). He noted that Plaintiff had no instability caused by his right hip, tenderness in his back, 5/5 motor strength, and normal gait and range of motion. (Tr. 434–35, PAGEID #: 493–494). At a follow-up appointment on October 16, 2014, Dr. Snell conducted a physical therapy evaluation, continued Plaintiff on pain medication, and gave him a referral to the Pain Center. (Tr. 431, PAGEID #: 490). He again noted that Plaintiff had no instability caused by his right hip, tenderness in his back, 5/5 motor strength, and normal gait and range of motion. (Tr. 431–32, PAGEID #: 490–491).

Dr. Snell completed a RFC questionnaire for Plaintiff at his October 16, 2014 appointment. (Tr. 427–29, PAGEID #: 486–88). He described Plaintiff's prognosis as "fair" and stated that his symptoms were pain in the lower back, right hip, and right leg. (Tr. 427, PAGEID #: 486). Dr. Snell opined that Plaintiff's symptoms are often severe enough to interfere with the

7

attention and concentration required to perform even simple work-related tasks, and that he would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical morning and afternoon breaks and lunch break. (*Id.*). He estimated that Plaintiff would need four to eight unscheduled minute breaks per workday, lasting 15 to 20 minutes each, and would be absent three or four times per month. (Tr. 427–28, PAGEID #: 486–87). Dr. Snell indicated that Plaintiff is not a malingerer and would not be physically capable of working an 8-hour day, 5 days a week on a sustained basis. (Tr. 428, PAGEID #: 487).

### D. Relevant Portions of the ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirements on September 30, 2014. (Tr. 24, PAGEID #: 83). The ALJ also determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 12, 2012, through his date last insured of September 30, 2014. (*Id.*). The ALJ concluded that, through the date last insured, Plaintiff had numerous severe impairments, consisting of degenerative disk disease of the lumbar and cervical spines, advanced right hip osteoarthritis, status post hip replacement surgery, left hip osteoarthritis, and obesity. (Tr. 24, PAGEID #: 83). The ALJ found that none of Plaintiff's severe impairments met or equaled the requirements of any section of the Listing of Impairments. (Tr. 25, PAGEID #: 84).

The ALJ found that through the date last insured Plaintiff had "the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the work must entail only occasional posturals." (Tr. 25, PAGEID #: 84). Although the ALJ assigned treating physician Dr. Columbus "more weight than other opinions in the record," he accepted Dr. Columbus's opinion only to the extent it found that Plaintiff could perform "light work." (Tr. 28, PAGEID #: 87). The ALJ rejected Dr. Columbus's opinion that Plaintiff be limited "to no

reaching below the knee, squatting or kneeling" based on his finding that it was unsupported by the evidence. (*Id*.). The ALJ also noted that "Dr. Snell reported that the claimant displayed 'normal' gait, 5/5 motor strength, intact sensation, no hip pain with full range of motion and reflexes in the lumbar spine." (*Id*.). However, the ALJ assigned Dr. Snell's opinion "little weight" based on his finding that it was unsupported by the treatment records. (Tr. 29, PAGEID #: 88). Finally, the ALJ assigned "great weight to the State agency consultants' physical assessments," despite the fact that they "did not personally examine the claimant." (*Id*.).

According to the ALJ, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that he could have performed. (Tr. 30, PAGEID #: 89). Based upon the foregoing, the ALJ concluded that Plaintiff has not been under a disability since January 12, 2012, the alleged onset date, through September 30, 2014, the date last insured. (*Id*.) Thus, the ALJ found that Plaintiff was not disabled during the relevant period. (Tr. 31, PAGEID #: 90).

## II.  LEGAL STANDARD

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D.

Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff asserts two assignments of error. First, he argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to follow the regulations and accorded inadequate weight to treating physician Dr. Columbus without providing good reasons.[1] Second, Plaintiff argues the ALJ's credibility findings are unsupported by substantial evidence. The Court first considers the ALJ's consideration of Dr. Columbus's opinion.

### A. The ALJ's Consideration of Dr. Columbus's Opinion

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). If an ALJ does not give a treating physician controlling weight, the ALJ is required to consider certain factors in deciding the appropriate weight. 20 C.F.R. § 416.927(c). Those factors include the examining relationship, the treatment relationship (including the length of the treatment relationship and the

---

[1] Plaintiff's Statement of Errors argues that the ALJ gave inadequate weight to treating physicians Dr. Columbus and Dr. Snell. (Doc. 14 at 1). However, Defendant argued in opposition that Dr. Snell was not a treating source for purposes of the relevant regulations because Dr. Snell did not have an ongoing relationship with Plaintiff that allows a "longitudinal picture" of his impairments. (Doc. 16 at 19). In reply, Plaintiff's arguments are directed to the weight assigned only to Dr. Columbus's opinion. (Doc. 18 at 1). Hence, the Court examines the treating physician rule only as to Dr. Columbus.

10

frequency of examination and the nature and extent of the treatment relationship), supportability, consistency, and specialization. *Id.*

Closely associated with the treating physician rule is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Here, the ALJ's analysis of the opinion evidence is unclear. The ALJ found that Dr. Columbus's "opinion to release the claimant to light duty work is supported the claimant [sic] objective findings contained in the longitudinal record; however, the evidence does not support a limitation to no reaching below the knee, squatting or kneeling." (Tr. 28, PAGEID #: 87). It appears the ALJ was attempting to conclude that, although Dr. Columbus's opinion that Plaintiff could perform light work is supported by the record, his opinion that Plaintiff may not reach below the knee, squat, or kneel is not. The sole piece of evidence the ALJ offered in support of this conclusion is Dr. Snell's note that the "claimant displayed a 'normal' gait, 5/5 motor strength, intact sensation, no hip pain with a full range of motion, only tenderness with normal range of motion and reflexes in the lumbar spine." (*Id.*). Nevertheless, the ALJ stated that he assigned "Dr. Columbus [sic] more weight than the other opinions in the record." (*Id.*).

What the ALJ meant by that assignment of weight is ambiguous. Presumably the Court needs to conduct its own analysis, looking to the ALJ's discussion of "the other opinions in the record" to determine if the ALJ accorded controlling weight, some weight, or little weight to Dr. Columbus's opinion. Further muddying the waters is that the ALJ gave "significant weight" to

the opinions of the state agency consultants who opined that "the claimant was able to perform a range of light work with postural limitations." (Tr. 29, PAGEID #: 88). Given the ALJ's decision to disregard Dr. Columbus's reaching, squatting, or kneeling restriction, and his decision to adopt the opinions of the state agency consultants wholesale, it appears the ALJ accorded the latter opinions more weight. This guessing game is what the relevant regulations are designed to prevent. *See Lambert ex. rel. Lambert v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 671, 685–89 (S.D. Ohio 2012). Because the ALJ assigned an undeterminable amount of weight to Dr. Columbus's opinion, remand is proper. *See id.*

Even if this Court were to speculate that the ALJ assigned Dr. Columbus's opinion less than the state agency consultants' opinions—which appears to be the case—the decision violates the treating physician rule. As an initial matter, the ALJ conducted no analysis of whether Dr. Columbus's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ likewise failed to determine whether Dr. Columbus's opinion was consistent with the other substantial evidence. To the extent that the ALJ conducted any consistency analysis at all, it was limited to finding that Dr. Columbus's reaching, squatting, or kneeling restriction was contrary to Dr. Snell's opinion that the "claimant displayed a 'normal' gait, 5/5 motor strength, intact sensation, no hip pain with a full range of motion, only tenderness with normal range of motion and reflexes in the lumbar spine." (*Id.*).

It is interesting that the ALJ used Dr. Snell's opinion to disregard Dr. Columbus's reaching, squatting, or kneeling restriction given that he assigned Dr. Snell's opinion only "little weight" based on his determination that it was unsupported by the treatment records. (*See* Tr. 29, PAGEID #: 88). In any case, it is improper for the ALJ to "cherry-pick" a sentence in the record to support his conclusion, which should be based instead on the record as a whole. *See*

*Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014); *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (noting that an ALJ cannot "cherry-pick[ ] select portions of the medical record" when conducting his analysis); *see also Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) ("But, the judge was selective in parsing the various medical reports...."); *Dotson v. Apfel*, No. 99-6163, 2000 WL 1562817, at *1 (6th Cir. Oct. 10, 2000) (noting that substantial evidence depends on "the record as a whole") (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Moreover, the ALJ's decision to give Dr. Columbus's opinion less than controlling weight required him to consider factors such as the examining and treatment relationship and the supportability and consistency of Dr. Columbus's opinion. *See* 20 C.F.R. § 416.927(c). However, there is no indication that the ALJ did so. Even a cursory examination of those factors reveals that Dr. Columbus is a physician who examined and treated Plaintiff no less than 29 times between January 25, 2012 and August 29, 2014 (*see* Section I(C) *supra*), and his reaching, squatting, or kneeling restriction was supported by and consistent with his treatment notes (*see id.*), and examining physician Dr. Chopra's opinion. (Tr. 240–42, PAGEID #: 299–301; Tr. 237, PAGEID #: 296 (continuing Plaintiff's work restrictions on February 22, 2012 and March 9, 2012)). Stated simply, the ALJ failed to give good reasons for assigning less than controlling weight to Dr. Columbus's opinion.

This is a case where the ALJ's treatment of the medical sources is not capable of meaningful judicial review. *See Johnson v. Comm'r of Soc. Sec.*, No. 1:14-cv-572, 2015 WL 1022075, at *7 (N.D. Ohio Mar. 9, 2015). "[T]o the extent that the individual strands in the rope" of the ALJ's opinion "can be untangled and examined," this Court has determined that the ALJ assigned an undeterminable amount of weight to Dr. Columbus's opinion. And even if the

13

Court were to assume that the weight given was less than controlling, the ALJ failed to give good reasons for assigning that weight. *Id.*; *Dixon*, 2016 WL 860695, at *4. Finally, there are no circumstances that warrant a finding of *de minimis* or harmless error. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). Based upon the foregoing, the Court finds that remand is warranted. *See id.* (remanding where the ALJ's decision did not reflect an analysis of the § 404.1527 factors).

### B. The Remaining Assignment of Error

Plaintiff also argues that the ALJ's credibility findings are unsupported by substantial evidence. (Doc. 14 at 1). The Court's decision to reverse and remand on Plaintiff's first assignment of error alleviates the need for analysis of Plaintiff's remaining assignment of error. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignment of error if appropriate.

## IV. CONCLUSION

In this case, the ALJ failed to follow the applicable procedural requirements in reaching his disability determination, which precludes meaningful review. Moreover, the error was not *de minimis* or harmless. The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even if his conclusion ultimately may be justified based upon the record. Accordingly, Plaintiff's Statement of Errors is **SUSTAINED** and the case is **REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g), Sentence Four.

IT IS SO ORDERED.


Date: May 25, 2017 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

14